Dana WILLIAMS, Defendant–
Below, Appellant,

v.

STATE of Delaware, Plaintiff–
Below, Appellee.

No. 113, 1999.

Supreme Court of Delaware.

Submitted: May 16, 2000.
Decided: July 12, 2000.

Edmund M. Hillis, Esquire, James D. Nutter, Esquire (argued), Office of the Public Defender, Wilmington, Delaware, Amicus Curiae for Appellant.

John Williams, Deputy Attorney General, Department of Justice, Dover, Delaware, for Appellee.

Before VEASEY, Chief Justice, WALSH and HOLLAND, Justices.

VEASEY, Chief Justice:

In this appeal we find an implied savings provision in legislation that amended the criminal stalking statute. The result is that a defendant who is charged with committing the crime of stalking under the old statute in effect at the time of the alleged crime may be convicted under the old statute even though the amending legislation that created the new statute did not include an express savings clause. The rationale for this holding is that the new legislation is not a repealer, and it would be an absurd result, clearly not intended by the General Assembly, to hold that prosecutions under the old statute would be rendered void as a consequence of the amendment. Accordingly, we affirm the judgment of the Superior Court holding that a savings clause must be implied in the amending legislation.

### Facts

On January 16, 1996, a Grand Jury returned an indictment charging Dana Williams with two offenses committed between October 30, 1995, and November 27, 1995: one count of stalking, in violation of 11 *Del. C.* § 1312A, and one count of non-compliance with conditions of bond, in violation of 11 *Del. C.* § 2113(c).[1] Thereafter, the General Assembly on April 3, 1996, enacted, and the Governor signed, a new statute amending 11 *Del. C.* § 1312A to redefine stalking offenses.[2]

Before its revision 11 *Del. C.* § 1312A had read as follows:

§ 1312A. Stalking; class F felony.

(a) Any person who willfully, maliciously and repeatedly follows or harasses another person or who repeatedly makes a credible threat with the intent to place that person in reasonable fear of death or serious physical injury is guilty of the crime of stalking.

The new legislation amended that statute as follows:

Section 1. *Amend* Section 1312A, Title 11, Delaware Code by *deleting* said section in its entirety and *substituting* in lieu thereof the following:

§ 1312A. Stalking; class F felony.

(a) Any person who intentionally engages in a course of conduct directed at a specific person which would cause a reasonable person to fear physical injury to him or herself, to a friend or associate, or to a member of his or her household or to a third person and whose conduct induces such fear in such person, is guilty of the crime of stalking.[3]

The State entered a *nolle prosequi* with respect to Williams' January 16, 1996 in-

---

**1.** Only Williams' prosecution for stalking in violation of 11 *Del. C.* § 1312A is at issue on appeal.

**2.** 70 *Del. Laws,* c. 316.

**3.** *Id.* (emphasis added).

dictment. On February 2, 1998, the Grand Jury reindicted Williams charging him, separately, with stalking under the terms of the old statute and the new statute.[4]

On February 27, 1998, Williams, in a pre-trial motion, moved to dismiss the stalking charge, arguing that the absence of a savings clause rendered his prosecution void. The Superior Court denied Williams' motion to dismiss, determining that 11 *Del. C.* § 1312A as amended contained an implied savings clause.[5] Following a three-day jury trial, Williams was convicted of the stalking charge under the former Section 1312A[6] as well as the charge of noncompliance with conditions of bond. Williams filed a *pro se* appeal in this Court. We granted Williams' request to proceed *pro se* and appointed *Amicus Curiae* to brief and argue the issue on appeal.[7]

### Analysis

■ This Court reviews *de novo* the Superior Court's construction of a statute.[8]

Courts must first look to the statutory language when determining legislative intent. Where the effect of a statute is in dispute, we seek to ascertain legislative intent[9] through a textual analysis of the statutory language.[10] But, the strict construction of statutory language is more of "an aid than an end," and "[i]t does not eliminate from consideration other guides to interpretation."[11]

■ The General Assembly may include, and at times does include, an express savings clause. There is no requirement that a savings clause be couched in any specific language.[12] Where there is no express savings clause, the overarching concern is discerning legislative intent when deciding whether to imply a savings clause.[13]

■ On appeal, the *Amicus Curiae* argues that the revised Section 1312A repealed the former version of the statute

**4.** Count I of the January 16, 1996 indictment charged that Williams "did willfully, maliciously and repeatedly follow or harass Sally Milbury Steen." In contrast, Count I of the February 2, 1998 reindictment charged that Williams "did (i) willfully, maliciously and repeatedly follow or harass Sally Milbury–Steen, and/or (ii) intentionally engage in a course of conduct ... which would cause a reasonable person to fear physical injury...." Subsection (i) of the reindictment, therefore, sets forth the elements of the old statute.

**5.** *See State v. Williams*, Del.Super., Cr. A. Nos. N98–02–0214 and N98–02–0215, 1998 WL 438740 (June 26, 1998) (ORDER).

**6.** Before charging the jury, the Superior Court, with the agreement of the State and defense counsel, deleted the second part of Count I of the February 2, 1998 indictment, which charged Williams with stalking under the new Section 1312A. The only part from Count I of the February 2, 1998 indictment given to the jury was the first part charging Williams with stalking under the former Section 1312A. The Superior Court instructed the jury on the crime of stalking under the former Section 1312A.

**7.** *See Williams v. State*, Del.Supr., No. 113, 1999, Holland J. (June 30, 1999) (ORDER).

The Court appreciates very much the fine professional work, graciously rendered *pro bono*, of Edmund M. Hillis, Esquire and James D. Nutter, Esquire.

**8.** *See Humm v. Aetna Cas. and Sur. Co.*, Del. Supr., 656 A.2d 712, 712 (1995); *Alfieri v. Martelli*, Del.Supr., 647 A.2d 52, 53 (1994); *Baldwin v. Benge*, Del.Supr., 606 A.2d 64, 67 (1992).

**9.** *See Humm*, 656 A.2d at 712 (citing *Alfieri v. Martelli*, 647 A.2d at 56).

**10.** *See Angelini v. Court of Common Pleas*, Del.Supr., 205 A.2d 174, 176 (1964); *see also Giuricich v. Emtrol Corp.*, Del.Supr., 449 A.2d 232, 238 (1982) (asserting that absent a clearly expressed legislative intent to the contrary, statutory language is conclusive).

**11.** *Angelini*, 205 A.2d at 176 (citing *Blaustein v. Standard Oil Co.*, Del.Supr., 49 A.2d 726 (1946)).

**12.** *See id.*

**13.** *State v. General Chem. Corp.*, Del.Super., 559 A.2d 292, 300–01 (1988). *See Angelini*, 205 A.2d at 176.

and that, as a consequence, the Superior Court cannot prosecute Williams for the crime of stalking.[14] Because it is undisputed that there is no express savings clause in the legislation amending Section 1312A, we must decide whether legislation enacting the current Section 1312A is an amendment or a repeal of the former statute. A *repeal*, absent a savings clause, suggests a legislative intent not to punish acts previously deemed to be criminal acts. Statutory *amendments*, on the other hand, are indicative of a legislative intent to continue to criminalize certain conduct.

▮ The Delaware General Assembly has codified the distinction between statutory amendments and statutory repeals as follows:

(d) When it is the purpose of an amendment to change the language of a section, as distinct from effecting an outright repeal of the section, *the amendment shall not be made by repealing* the section and enacting a new section in lieu thereof. In such case, the amendment shall be made by stating specifically the manner in which the section is to be amended: i.e., *the amendment should state that a specified section is amended by striking* out the words which it desired to change (stating their location in the section) *and substituting* therefor the new words. If the changes are such as do not lend themselves easily to this type of amendment, the amending act may state that the section (specifying it by section and title number) is amended to read as thereinafter set forth. *A section should be repealed, as distinct from amended, when an outright repeal thereof is intended or when the subject matter of the proposed new law is more than a mere amendment or revision of the old section.*[15]

The use of the word "amend," by itself, is not dispositive of legislative intent.[16] Even if an act by the General Assembly is labeled as an amendment, it can, in some circumstances, have the same qualitative effect as a repeal.

▮ In addition to the language of the new statute, we can also imply a savings clause from other circumstances that manifest legislative intent.[17] In this case, the use of the word "amend," when juxtaposed with the terms "by deleting" and "substituting" in the same sentence of the new legislation, suggests that it was the legislative intent to keep the statute in effect for crimes committed before the amendment.[18]

14. Under *Amicus Curiae's* theory, the State is prohibited from prosecuting Williams for stalking under any version of Section 1312A on the following rationale: Williams would not be subject to punishment under the previous statute because of its repeal and the *Ex Post Facto* Clause under the United States Constitution would prevent the State from applying the current statute because the alleged criminal conduct occurred prior to the enactment of the revised statute. *See* U.S. Const. art. I, § 10; *see generally Carmell v. Texas,* — U.S. —, 120 S.Ct. 1620, 146 L.Ed.2d 577 (2000).

15. 1 *Del. C.* § 109(d) (emphasis added) (distinguishing between statutory amendments and repeals). While the general purpose of Section 109(d) is to assist with the drafting of legislation, that provision can also be used by the courts for interpretation purposes.

16. *See General Chemical,* 559 A.2d at 300.

17. *See Angelini,* 205 A.2d at 176.

18. *See id.* The synopsis to the House Bill that was later enacted provides further guidance concerning the legislative intent:

This Act rewrites the stalking and harassment statutes. The revision of the stalking statute redefines the essential element of this crime, a reasonable fear of injury in the victim. Provisions are added to provide enhanced penalties for stalking committed in violation of an existing judicial order, stalking that is repeated within a five-year period.... The enhanced penalties include short jail terms which cannot be suspended for violation of court orders and for repeated stalking and higher levels of felony classification for stalking which includes threats of death or serious physical injury and possession of a weapon.

70 *Del. Laws,* c. 316 (formerly H.B. 150, 138th Gen. Assembly). This synopsis does not manifest an intent to prohibit prosecution for

A change in the statutory scheme need not be fatal to a prosecution for a particular offense if the essence of the offense charged under the former statute remained an offense under the replacement statute.[19] Under these circumstances, a court could infer legislative intent to continue the criminal sanction and therefore could imply a savings clause.[20] In this case, Williams' conduct constitutes stalking under both versions of the statute. Both versions of Section 1312A express a clear intent to prohibit stalking, not the intent to wipe clean the slate of criminal prosecutions for stalking under the former version of Section 1312A. Indeed, the new Section 1312A is broader, more encompassing and requires less onerous proof of the statutory elements than the old provision.[21]

An outright repeal[22] of the former version of Section 1312A, without implying a savings clause, would terminate all prosecutions that have not attained final judgment as of the effective date of the repeal. This Court has held that a repeal is found only in circumstances where the two provisions are "irreconcilably inconsistent, repugnant to each other, or lead to absurd, unjust, or mischievous results."[23] None of those circumstances exists here.

### Conclusion

The General Assembly did not use the word "repeal" when it deleted the old section and substituted the new section. There is no evidence of legislative intent to repeal the former Section 1312A. To hold that the current Section 1312A is a repeal would yield an illogical result that is plainly inconsistent with the General Assembly's intent. In the current statute, the General Assembly has criminalized in broader language than the old statute all stalking occurring after the April 3, 1996 effective date. Therefore, the amendment creating the current version of Section 1312A does not constitute a repeal of the old provision. Accordingly, we affirm the judgment of the Superior Court.

---

the crime of stalking, but does indicate that the amendment sought to redefine an essential element of the stalking offense and enhance penalties.

19. *See General Chemical*, 559 A.2d at 300–01.

20. *See id.*

21. In *Harris v. State* we said, "where an amendment substantially increases penal sanctions, a savings clause, in the absence of legislative intent to repeal, must be implied." Del.Supr., 293 A.2d 562, 564 (1972); *see also State v. Patnovic*, Del.Super., 129 A.2d 780, 782 (1957) ("[W]here a penal act is amended by increasing the punishment only, an implied saving clause must be written into the amendment insofar as concerns all pending prosecutions."). Although *Harris* does not strictly apply because the classification as a class F felony was unchanged, the same concept is relevant because the new statute is broader.

22. *See Harris*, 293 A.2d at 563–64; *see also Patnovic*, 129 A.2d at 780–81 ("At common law, the repeal of a penal statute containing no saving clause was held to constitute a bar to the prosecution and punishment of a crime already committed in violation of the statute so repealed.") (citing 22 C.J.S. *Criminal Law*, § 27(b)).

23. *David S.W. v. State*, Del.Supr., 509 A.2d 1100, 1102 (1986) (citing *Fraternal Order of Police v. McLaughlin*, Del.Supr., 428 A.2d 1158 (1981)).