**STATE of Delaware**

v.

**Mahir ISMAAEEL.**

Superior Court of Delaware,
Sussex County.

Submitted: Dec. 23, 2003.
Decided: Jan. 13, 2004.

Adam D. Gelof, Deputy Attorney General, Department of Justice, Georgetown, for the State.

Carole C. Dunn, Georgetown, for Defendant.

## OPINION

STOKES, J.

### *BACKGROUND*

Mahir Ismaaeel (hereafter "Defendant") was charged with five drug offenses by information dated May 14, 2003. The State of Delaware (hereafter "State") alleged that: Defendant committed the offense of Trafficking in Cocaine involving, in part, his possession of at least 5 grams but less than 50 grams of cocaine on April 3, 2003 in Count 1; Defendant committed the offense of Possession With Intent to Deliver Cocaine in Count 2; Defendant committed the offense of Maintaining a Dwelling for Keeping Controlled Substances in Count 3; Defendant committed the offense of Conspiracy in part by agreeing with another to engage in conduct constituting the felony of Trafficking in Cocaine in Count 4; and Defendant committed the offense of Possession of Drug Paraphernalia alleged to be a bag to store or contain controlled substances in Count 5.

The Defendant pled not guilty to these charges on June 17, 2003. On August 27, 2003, Defendant waived his right to a jury trial. Following a bench trial, Defendant was convicted of all the charges except for Count 3, Maintaining a Dwelling.

At trial, the defense moved to dismiss the trafficking and conspiracy counts. The argument concerned the effect of House Bill Number 210 (hereafter "H.B. No. 210") (amended by Senate Amendment No. 3 and codified at 74 *Del. Laws* c. 106 (2003)). It was approved on June 30, 2003, and changed the first level weight criteria from 5 to 10 grams. The defense argued that this change repealed prior law and decriminalized, forgave, and eliminated all trafficking prosecutions involving weights of cocaine less than 10 grams before and after June 30, 2003.[1]

In this view, the motion claimed:

8. Defendant contends that, as those alleged to be in possession of a cocaine weight under ten grams, the June 30th enactment is not a mere amendment of the statutory subsection, but rather, a *substantive and qualitative change in law* which extinguishes the legal basis for prosecuting Defendant for trafficking in this case, and further, provides no penalty or sentence, for one not in possession of the *minimum requisite weight.*

While recognizing the general savings statute in 11 *Del. C.* § 211,[2] Defendant assert-

---

1. The statute in place on April 3, 2003 was 16 *Del. C.* § 4753A(a)(2)a. ("Any person who . . . is knowingly in actual possession of 5 grams or more of cocaine . . . is guilty of . . . 'trafficking in cocaine' ").

2. (a) The repeal of any statute creating, defining or relating to any criminal offense set

forth under the laws of this State, shall not have the effect of releasing or extinguishing any penalty, forfeiture of liability incurred under such statute, unless the repealing act shall so "expressly provide," and such statute shall be treated as remaining in full force and effect for the purpose of sustaining any proper action or prosecution for the

ed the repeal provisions of Subsection (a) would not apply to him as he had not been sentenced. Concerning the amendment terms of Subsection (b), Defendant's position was that this provision "addresses the situation of continued applicability of a prior version of a statute to cases in progress if a statute is later *amended*." (Def.'s Mot. ¶ 7 (Defendant's emphasis)). Since a repeal was alleged, the amendment section was immaterial.

The motion to dismiss the trafficking and conspiracy counts was denied. However, time was given for additional consideration for, if there was a repeal, the two charges could not stand. The State answered the defense motion on September 24, 2003. Thereafter, the defense replied on November 13, 2003, one day before sentencing on November 14th.

The reply changed the defense's position; the claim that H.B. No. 210 repealed existing law and decriminalized trafficking in cocaine was abandoned. Defendant's new approach was: "defendant does not disagree that trafficking of illegal substances remains a punishable crime in Delaware notwithstanding the June 30, 2003 enactment; and, thus, the trafficking statute has not been repealed. However, it should be noted that defendant, in this case, was also found guilty of the same conduct on April 3, 2003 of Possession With Intent to Deliver Cocaine, a lesser-included offense, for which defendant is exposed, under both statutes, to significant Level 5 incarceration." Defendant further argued that the general savings statute would not apply to an amended law like

H.B. No. 210 and that the lesser penalties of H.B. No. 210 should be effective.

Given these circumstances, the sentencing was postponed until December 23, 2003, and the State filed another response. At sentencing, Defendant reconfirmed that the trafficking statute had not been repealed. Further, Defendant conceded that Possession With Intent to Deliver Cocaine was not a lesser-included offense of Trafficking in Cocaine under well-settled principles of Delaware law. *See McNair v. State*, 825 A.2d 239 (Table), 2003 WL 21241355, at *1 (Del.); *State v. Skyers*, 560 A.2d 1052, 1054 (Del.1989). The Defendant's arguments were rejected, the trafficking and conspiracy convictions were not vacated, and he was sentenced under the law in effect on April 3, 2003. On the trafficking charge, Defendant received a three-year mandatory minimum period of imprisonment. Given a prior conviction for Possession With Intent to Deliver Cocaine, the sentence on the same offense in Count 2 was a 15–year required jail term. Defendant contends his sentence should be mandatory terms of two years for trafficking and 3 years as a second offender for Possession With Intent to Deliver Cocaine under H.B. No. 210 rather than 3 and 15 year terms imposed under prior law.

### ISSUES

1. Did the general savings statute under 11 *Del. C.* § 211 preserve rules of law which were later amended?

2. Did the Delaware General Assembly direct that the provisions of H.B.

---

enforcement of such penalty, forfeiture or liability.

(b) Any action, case, prosecution, trial or other legal proceeding in progress under or pursuant to any statute relating to any criminal offense set forth under the laws of this State shall be preserved and shall not become illegal or terminated in the event

that such statute is later amended by the General Assembly, irrespective of the stage of such proceeding, unless the amending act expressly provides to the contrary. For the purposes of such proceedings, the prior law shall remain in full force and effect. (71 *Del. Laws*, c. 263, § 1 (1997)).

210 providing different drug weights and penalties by amendment be retroactive to reach criminal conduct before the date of its enactment?

### DISCUSSION

Trafficking in Cocaine is a Class B felony defined in 16 *Del. C.* § 4753A(2)(a). On April 3, 2003, defendant possessed 7.5 grams of cocaine. At that time, he was responsible for having this quantity and subject to a 3 year minimum mandatory sentence. On June 30, 2003, H.B. No. 210 was approved. The Bill is captioned "AN ACT TO AMEND TITLES 10, 11, 16 AND 21 OF THE DELAWARE CODE RELATING TO CERTAIN CRIMES."

Concerning the Trafficking in Cocaine offense, and the penalties for it, and a second offense for Possession With Intent to Deliver Cocaine, it provided:

Section 13. Amend Subparagraphs ... (a)(2)a., ... of § 4753A of Title 16 of the Delaware Code by striking the phrase "3 years" as it appears variously therein, and by substituting in lieu thereof the phrase "2 years."

Section 16. Amend § 4753A(a)(2) of Title 16 of the Delaware Code by striking the phrase "5 grams" as it appears therein, and by substituting in lieu thereof the phrase "10 grams."

Section 17. Amend § 4753A(a)(2)a. of Title 16 of the Delaware Code by striking the phrase "5 grams" as it appears therein, and by substituting in lieu thereof the phrase "10 grams."

Section 22. Amend § 4763(a)(2) of Title 16 of the Delaware Code by striking subparagraphs a. and b. of said paragraph in their entirety, and by substituting in lieu thereof the following:

"a. § 4751 (excepting heroin or any mixture containing heroin) or § 4752, 3 years.

b. § 4751 (heroin or any mixture containing heroin), 5 years."

Section 23. Amend § 4763(a)(3) of the Delaware Code by striking said paragraph in its entirety.

■ Reviewing the amendment, a specific savings clause is not provided. Nothing is said whether H.B. No. 210 reaches backward or forward in time or what effect it would have on pending prosecutions or uncharged offenses for acts before June 30th. Obviously, if Defendant possessed 7.5 grams of cocaine after June 30, 2003, he could not be convicted and sentenced for trafficking. Moreover, only individuals possessing 10 or more grams of cocaine are exposed to a 2 year mandatory minimum term. Trafficking in Cocaine continued as a Class B felony except Section 9 of H.B. No. 210 increased the maximum sentence from 20 to 25 years. The Defendant cannot receive this greater punishment under *ex post facto* principles of law of the U.S. Constitution as applied to the states through the Due Process Clause of the Fourteenth Amendment. *See DiStefano v. Watson*, 566 A.2d 1, 5 (Del.1989) ("A law violates the *ex post facto* provision, when it changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed." (citations omitted)).

Given this background, the general savings statute must be considered, as H.B. No. 210 provides for punishment and is a penal statute. Subsection (b) states:

"(b) Any action, case, prosecution, trial or other legal proceeding in progress under or pursuant to any statute relating to any criminal offense set forth under the laws of the State shall be preserved and shall not become illegal or terminated in the event that such statute is later amended by the General Assembly, irrespective of the stage of such proceedings, *unless the amending*

*act expressly provides to the contrary. For the purposes of such proceedings, the prior law shall remain in full force and effect."*

11 *Del. C.* § 211(b) (emphasis added).

This law was approved on April 20, 1998 and, according to its synopsis, is modeled in part upon federal law.[3]

■ Where legislation is structured on other laws, the Delaware courts look to them for insight. In *Garden v. State,* 815 A.2d 327, 342–3 (Del.2003), Florida's death penalty jurisprudence was germane because there was a legislative linkage between the laws of Delaware and Florida. The Court wrote that: "Delaware's death penalty statute, as redrafted in 1991, was written to emulate Florida's law, which was upheld by the Supreme Court in *Proffitt [v. State of Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913]." *Id.* at 342. *See also* 68 *Del. Laws* c. 181 (1991), Synopsis (stating "this bill generally follows the Florida statute as approved by the United States Supreme Court" (citations omitted)).

Similarly, after consideration of recognized authority, a Delaware long-arm statute, 10 *Del. C.* § 3104, was determined to be a "single act" and not a "consent" statute. As then Chief Justice Herrmann opined:

> This and other language in [§] 3104 ... is derived almost completely from [§] 103 of the Uniform Interstate and International Procedure Act, a 'single act' statute.... Given the great similarity in language and construction of these

two Acts, we conclude that [§] 3104 is not a consent statute as defendant contends, but is a 'single act' statute....

*Eudaily v. Harmon,* 420 A.2d 1175, 1180 (Del.1980) (citations omitted).

Concerning federal law, Congress passed the following general savings statute:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture or liability.

1 U.S.C. § 109.

The Delaware general savings statute mirrored this language:

> The repeal of any statute creating, defining or relating to any criminal offense set forth under the laws of this State, shall not have the effect of releasing or extinguishing any penalty, forfeiture or liability incurred under such statute, unless the repealing act shall so expressly provide, and such statute shall be treated as remaining in full force and effect for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture or liability.

11 *Del. C.* § 211(a).

■ At the federal level, an amendment is considered a repeal for purposes of the

---

**3.** This Bill adds a savings clause to Delaware's criminal code. The savings clause ensures that legislative revision to the criminal code does not have the unintended consequence of repealing an existing law, thus ending a prosecution for conduct which occurred prior to the repeal. The savings clause guards against an unanticipated judicial interpretation which holds that an amendment of a statute constitutes a repeal. The General Assembly will still have the authority to explicitly terminate such prosecutions. Savings clauses are common in the criminal codes of other jurisdictions; this Bill is modeled in part upon federal law.

*1998 Del. Laws* c. 263 (H.B. 277).

general savings statute. *See United States v. Stillwell,* 854 F.2d 1045, 1048 (7th Cir.1988). Analytically, a "new" statute comes into play whether a law is specifically repealed or an existing statute is modified. *See Moorehead v. Hunter,* 198 F.2d 52, 53 (10th Cir.1952). The General Assembly provided for repeals and amendments in 11 *Del. C.* § 211(a), (b). The Legislature thereby recognized the long-standing federal experience that treated repeals and amendments alike when enacting the Delaware general savings statute. Therefore, both subsections should be read together to produce a harmonious result.

The Delaware legislature had appropriate ground to adopt this statute. At common law, pending prosecutions were terminated when a criminal statute was repealed. Without a general savings statute, judges were forced to examine the specific legislation, and, if an express or implied savings clause could not be found, "all actions which [had] not attained a final judgment [were] to be terminated." *Angelini v. Court of Common Pleas,* 205 A.2d 174, 175 (Del.1964). As the Delaware Supreme Court stated, "[a] *repeal,* absent a savings clause, suggests a legislative intent not to punish acts previously deemed to be criminal acts. Statutory *amendments,* on the other hand, are indicative of a legislative intent to continue to criminalize certain conduct." *Williams v. State,* 756 A.2d 349, 352 (Del.2000). Consequently, the repeal of a criminal law without any savings clause barred prosecution and punishment "of a crime already committed in violation of the statute so repealed." *Id.* at 353 n. 22, *citing, State v. Patnovic,* 129 A.2d 780, 780–81 (Del.Super.Ct.1957) (citation omitted). In *Williams,* the Court found an implied

savings clause in an amendment to a stalking statute.[4]

■ With similar points in mind, federal courts found that the federal general savings statute abolished the common law presumption that the repeal of a criminal law terminates earlier prosecutions. *Stillwell,* 854 F.2d at 1047–48. Pending actions are not abated, and, law changes are given prospective effect, unless Congress directs otherwise. *See Holiday v. United States,* 683 A.2d 61, 64 (D.C.1996), *cert. denied sub nom., Palmer v. United States,* 520 U.S. 1162, 117 S.Ct. 1349, 137 L.Ed.2d 506 (1997).

*Holiday* considered consolidated appeals of several defendants. The primary issue concerned whether the defendants were entitled to the benefit of ameliorative sentencing changes enacted after the time of their crimes. Holiday was convicted of distribution of cocaine, among other charges, and received a 4 to 12 year prison term, with 4 years being a mandatory minimum period of incarceration. Before sentencing, the law requiring mandatory time was repealed. Nonetheless, the court concluded that the sentence should be what the law required at the time of the crime.

*Holiday* related that the federal courts, unlike many state courts, read the language of the general savings clause literally. The word "prosecution" in the general savings statute included sentencing, and the penalty accrued and was incurred at the time of the crime. The decision quoted United States Supreme Court precedent, that " '[i]n the legal sense, prosecution terminates only when the sentence is imposed.' " *Id.* at 72, *citing, Bradley v. United States,* 410 U.S. 605, 609, 93 S.Ct. 1151, 35 L.Ed.2d 528 (1973) (more lenient sentencing provisions of the Comprehen-

---

4. The Delaware general savings statute was passed 2 months before the Superior Court found an implied savings clause. 11 *Del. C.* § 211 was not the subject of the appeal.

sive Drug Abuse Prevention and Control Act of 1970 were not available to a defendant).

As the *Holiday* opinion noted, "[t]he Court extended its special savings clause analysis in *Bradley* to the general federal savings statute in *Warden, Lewisburg Penitentiary v. Marrero,* 417 U.S. 653, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974)." *Holiday,* 683 A.2d at 72. In *Marrero,* the general savings statute barred "application of ameliorative criminal sentencing laws repealing harsher ones in force at the time of the commission of an offense." *Marrero,* 417 U.S. at 661, 94 S.Ct. 2532.

The United States Supreme Court, in *Marrero,* interpreted the federal general savings clause literally, refusing to apply retroactively a statutory revision permitting eligibility for parole where there had not been any before. Likewise, the Court has given little weight to the idea that the general savings statute applied only to "technical abatement" of an entire prosecution rather than punishment issues. *See United States v. Ross,* 464 F.2d 376, 379–80 (1972), *cert. denied,* 410 U.S. 990, 93 S.Ct. 1507, 36 L.Ed.2d 188, *reh'g denied,* 411 U.S. 977, 93 S.Ct. 2151, 36 L.Ed.2d 700 (buttressing its holding on the general savings statute that defendant was properly sentenced to a mandatory minimum ten year term of imprisonment under statute in effect at the time of the commission of the offense, rather than under the Comprehensive Drug Abuse Prevention and Control Act of 1970, which became effective prior to the conviction and sentencing of the defendant).

Furthermore, the United States Supreme Court determined that the federal savings statute is a substantive provision that is incorporated into every statute that amends or repeals another law imposing a penalty, forfeiture, or liability. As the Court explained in *Great Northern Ry. Co.* *v. United States,* 208 U.S. 452, 465, 28 S.Ct. 313, 52 L.Ed. 567 (1908):

> This provision [the statutory predecessor of the general savings statute, 1 U.S.C. § 109] but embodies § 4 of the act approved February 25, 1871 (16 Stat. at L. 431, chap. 71, U.S. Comp. Stat. 1901, p. 6), which was entitled "An Act Prescribing the Form of the Enacting and Resolving Clauses of Acts and Resolutions of Congress, and Rules for the Construction Thereof." As the [general savings statute] in question has only the force of a statute, its provisions cannot justify a disregard of the will of Congress as manifested either, expressly or by necessary implication, in a subsequent enactment. But, while this is true, the provisions of [the savings statute later recodified as 1 U.S.C. § 109] are to be treated as if incorporated in and as a part of subsequent enactments, and therefore under the general principles of construction requiring, if possible, that effect be given to all the parts of a law, the section must be enforced unless, either by express declaration or necessary implication, arising from the terms of the law as a whole, it results that the legislative mind will be set at naught by giving effect to the provisions of [1 U.S.C. § 109].

Where a liability has incurred, Congress could easily express its intent to change the result called for by the general savings statute. *See Hertz v. Woodman,* 218 U.S. 205, 30 S.Ct. 621, 54 L.Ed. 1001 (1910). (When liability for inheritance tax arose at testator's death, although payment was due a year later, repeal of the tax after the death but before the annual due date did not terminate liability. If the one year period for payment was the measuring stick, Congress could have easily made that purpose clear.)

■ Like the Supreme Court determined in *Great Northern Ry Co.*, § 211 is a positive rule of law. It should be incorporated in legislation whenever the General Assembly does not intend differently. As one treatise reported:

Although these general savings statutes sometimes have been designated as mere rules of construction to be applied only to resolve a question of the legislative intent, the prevalent and the more favored view is to construe the savings provisions as positive legislation which should be given effect as though they were incorporated into every future enactment involving a substantive right.

1A Norman J. Singer, *Statutes and Statutory Construction*, § 23:38 at 581–82 (6th ed. 2000) (footnotes omitted).

■ Moreover, the General Assembly is presumed to know the well-established construction and effect given to the federal general savings statute upon which the comparable Delaware statute was constructed. Like *Garden* and *Harmon*, there is a significant connection between these laws. Consequently, the holdings of federal cases interpreting comparable provisions of 1 U.S.C. § 109 are persuasive. *See United States v. Stewart*, 865 F.2d 115, 118 (7th Cir.1988) (relying in part upon general federal savings statute to sentence defendant under the old statutory scheme absent a clear legislative intent to apply the provision of the Sentencing Reform Act retroactively; defendant did not receive benefit of guidelines that were enacted after his conviction but two weeks before his sentence); *cited in Robinson v. State*, 584 A.2d 1203, 1205 n. 1 (Del.1991) ("The Truth in Sentencing Act was never intended by the Delaware General Assembly to have a retroactive effect.") H.B. No. 210 applies only to offenses that are committed after June 30, 2003.

This conclusion is supported by other Delaware principles. The terms of a penal statute are construed "according to the fair import of their terms to promote justice and effect the purposes of the law, as stated in § 201 of this title." 11 *Del. C.* § 203. One general purpose of the Criminal Code is:

To insure the public safety by preventing the commission of offenses through the deterrent influence of the sentences authorized, the rehabilitation of those convicted and their confinement when required in the interests of public protection.

11 *Del. C.* § 201(5).

■ A literal meaning is given to words used in a statute unless the terms are ambiguous or reasonable doubt exists about what is meant. *See Coleman v. State*, 729 A.2d 847, 851 (Del.1999). Where technical words have acquired a distinctive meaning, they "shall be construed and understood according to such peculiar and appropriate meaning." 1 *Del. C.* § 303.

■ The word "prosecution" in Subsections (a) and (b) of the Delaware general savings statute is a technical word. The federal cases show sentencing is a component part of this term. To the same effect, Delaware Superior Court Criminal Rule 32(b) provides that judgment of conviction must include the sentence and adjudication of any criminal charge. Supreme Court Rule 6(a)(ii) provides for direct criminal appeals within 30 days after a sentence is imposed. Further, Subsection 211(b) does not just use the word "prosecution" but includes "[a]ny action, case prosecution, trial or other legal proceeding in progress ... irrespective of the stage of such proceeding...." It goes on to say, "the prior law *shall* remain in full force and effect." *Id.* (emphasis added). This language is not ambiguous nor is there a reasonable

doubt as to what is intended. The use of the word "shall" is mandatory and has no room for discretion. *Heil v. Nationwide Mut. Ins. Co.*, 371 A.2d 1077, 1078 (Del. 1977). The prior law in effect before June 30, 2003 must be applied unless the General Assembly required retroactive effect in H.B. No. 210.

Concerning this point, H.B. No. 210 does not say its provisions are retroactive, and its words do not fairly convey that intention. Defendant looks to the synopsis for an implied intent for reduced sentencing. The synopsis to the legislation, however, relates the following:

> This Act will ensure that Delaware's prison space is reserved for violent offenders. The penalties currently available to punish offenders convicted of certain violent crimes are inadequate to protect society from them, and are insufficient to deter others from committing similar crimes. The prison space necessary to accommodate this toughening of our sentencing practices will be created by reallocating prison beds currently devoted to certain drug and motor vehicle offenders. Adoption of this Act is recommended by Delaware's Sentencing Accountability Commission (SENTAC).

H.B. No. 210, 142d General Assembly (2003).

The synopsis is forward looking for offenses occurring after June 30th. Its goals are precatory and reflect concepts rather than legislative commands. These points are consistent with the Delaware general savings statute, and they do not create a safe harbor for Defendant.

 Furthermore, a synopsis is not a substitute for the words of a law. In *State v. Kane*, 101 Wash.App. 607, 5 P.3d 741 (2000), the defendant wanted to be sentenced under a Drug Offender Sentencing Alternative law (DOSA). Initially, the law was not available for convicted felons. After defendant committed a drug crime, the law was amended, and the bar for nonviolent felons was removed. Kane was eligible if the amendment applied to him. It would reduce his jail term by one-half for substance abuse treatment under community custody.

The Court reviewed the legislative history:

> The only pertinent inquiry is whether any section of the bill contains words that fairly express the Legislature's intention to apply the new DOSA eligibility criteria to cases arising before July 25, 1999. The answer to that question is no.... [T]he 1999 legislation contains no language that even remotely suggests an intention to make the amended eligibility criteria available in cases arising before the effective date.

Kane does not try to demonstrate that the statute itself contains words that fairly convey that intention. He contends, however, that such an intent can be reasonably inferred from legislative materials describing the remedial concerns that prompted the amendment. A House Bill report states, "The drug offender sentencing alternative is being underutilized. This bill would open up that program, which will have beneficial outcomes." Senate Bill Report reflects a similar concern about underutilization of the sentencing alternative, and states, "This is a measure that gets tough on those who have a substance abuse problem, but also stops the revolving door to the prisons. It gives the offender the treatment he needs so he is less likely to offend again, while still requiring confinement.

Analysis of legislative intent regarding retroactivity is not ordinarily restricted to the statute's express language, and may be gleaned from other sources, in-

cluding legislative history. But here again, because the Drug Offender Sentencing Alternative is a penal statute, the issue is whether the new statute's express language shows that the Legislature intended to depart from the presumption created by the savings statute. In this situation, legislative history materials cannot make up for the lack of words that fairly convey that intention in the 1999 amendatory statute itself. Therefore, while the bill reports do manifest a legislative purpose to increase, in various ways, intervention and treatment for offenders addicted to drugs, we must conclude that the intent of the Legislature is to accomplish that purpose only with respect to defendants who offend after its effective date."

*Id.* at 744–45 (citations omitted).

The federal approach is similar. *See Holiday,* 683 A.2d at 76–79 (finding that reports of bill's purpose " 'to reduce the mandatory-minimum sentences for unarmed drug offenders' " together with language "[r]educing mandatory-minimums for non-violent *offenders charged after the effective date of this act* will also make more space available in the District's corrective facilities for violent offenders" did not override the applicable general savings statute (emphasis in original)).[5]

Defendant argues that another law, 16 *Del. C.* § 4791(a), should be read with 11 *Del. C.* § 211(b). In light of this, Defendant contends the former trafficking statute should be applied with lesser penalties for the drug offenses.

§ 4791(a) provides:

Prosecution for any violation of law occurring prior to the effective date of this chapter is not affected or abated by this chapter. If the offense being prosecuted is similar to one set out in subchapter IV of this chapter, then the penalties under subchapter IV apply if they are less than those under prior law.

Section 4791 was added to the Uniform Controlled Substances Act in 1971 (58 *Del. Laws,* c. 424, § 1(1971)) and was originally codified as 16 *Del. C.* § 4773. Its effective date was in January of 1973. *See* 16 *Del. C. Ann.* § 4773 (Revisors' note, Noncumulative Supp. 1972). The section was given its present designation as § 4791 in a 1979 amendment. 62 *Del. Laws,* c. 250, § 5 (1979).

The Uniform Act, effective January 2, 1973, was "adopted as part of a nationwide effort to achieve uniformity between the drug laws of the various states and federal legislation so as to enable all levels of government to more effectively control the drug abuse problem." *State v. Gula,* 320 A.2d 752, 753 (Del.Super.Ct.1974). A comprehensive system of offenses and penalties was established in subchapter IV. The amendment adding § 4773 in 1973 reflected this major effort to revise Delaware's drug laws. It has a specific savings clause for any violation occurring before the effective date of the chapter. The amendment specifically provides, "[t]his act shall take effect on the 1st day after the beginning of the 7th month following the date of its enactment." 58 *Del. Laws* c. 424, § 6 (1971). By its terms, this section does not apply to subsequent amendments and should not be read with legislation enacted over 30 years later.

If the General Assembly intended to excuse Trafficking in Cocaine offenses for quantities between 5 and 10 grams and to reduce sentences for drug offenses arising before June 30, 2003, it would have made

5. The District of Columbia had a savings statute that was comparable to the federal general savings statute, and the legislative material referenced District of Columbia legislative reports.

that purpose clear. When desired, it knows how to do so as seen in 16 *Del. C.* § 4791(a). Ordinarily, amendatory acts are prospective in operation. 82 C.J.S. *Statutes* § 412 (1999). This notion is consistent with the principle discussed in one Delaware case by Judge Carey that:

> There are no words in the Act expressly declaring it to be retroactive, and we can find nothing contained therein which would indicate any legislative intent to make it so. On the other hand, the presumption is to the contrary. "Retrospective operation is not favored by the Courts, and a law will not be construed as retroactive unless the Act clearly, by express language or necessary implication, indicates that the legislature intended a retroactive application."

*State v. Nixon*, 46 A.2d 874, 875 (Del.Gen. Sess.1946) (citations omitted).

The Legislature has good reason to treat all cases arising before the effective date in an evenhanded manner. As the Court recognized in *Holiday* at 78–9:

> We cannot say that a legislature could not rationally conclude that the best approach would be a purely prospective one, so that all defendants who committed crimes before the statute became effective would be treated equally. Otherwise, sentencings could get caught up in manipulations with unfair results overall. Some convicted felons, for example, might be able to arrange sentencing delays to take advantage of the new sentencing scheme, whereas others could not achieve the same result before less sympathetic judges. But, more fundamentally, we see nothing irrational in a legislative conclusion that individuals should be punished in accordance with the sanctions in effect at that time the offense was committed, a viewpoint en-

compassed by the savings statutes themselves. In short, absent an express provision specifying the class or classes to which the new sentencing scheme applies, we cannot conclude that, "obviously" and inevitably, the legislature must have intended a retroactive, rather than a prospective, approach.

A different conclusion does not promote the general purpose of the Criminal Code to provide for public safety with deterrent sentences. It would also result in "an injustice which the legislature cannot be presumed to have intended." *Angelini,* 205 A.2d at 176. If Defendant's interpretation is accepted, then everyone whose conviction was not finally adjudicated before June 30th would receive a windfall. On the other hand, those whose convictions were affirmed on direct appeal or had pled guilty without an appeal before June 30th would have longer penalties of law. Such an imbalanced effect would produce categories of offenders exposed to disparate results for similar conduct based on the happenstance of a disposition date. Delaware's lawmaking authorities do not have such a capricious or discriminatory intent. *See Id.* at 176 (defense argument was rejected that new motor vehicle driving law phased in over a 6–month period was a repeal; the Supreme Court refused to impute to the Legislature an intent to discriminate without a reasonable basis, i.e., a predetermined intent, to punish those offenders whose cases were concluded within the six-month period, but to forgive those whose cases could not be disposed during that time); *Wicks v. State,* 559 A.2d 1194, 1196 (Del.1989) (General Assembly did not intend punishment to depend upon fortuitous circumstance of when a defendant was convicted and sentenced).[6]

---

**6.** A contrary result would also require the resentencing of other defendants as the Supe-

rior Court has applied the law in effect at the time of offenses. Sentences on review could

This result also produces a harmonious result under Subsections (a) & (b) of § 211. Together, prior law is used in the conviction and punishment of offenders (absent different legislative direction). Like federal law, the phrase "penalty, forfeiture, or liability" in Subsection (a) would include punishment authorized at the time of the offense. *See United States v. Blue Sea Line*, 553 F.2d 445, 448 (5th Cir.1977) (words "'penalty, forfeiture, or liability' encompass criminal sanctions").[7] Under the general savings statute, if the Legislature repealed a penal law without making it retroactive, a defendant could be prosecuted under Subsection (a) for acts committed beforehand. Although Defendant would have it otherwise, an amendment under Subsection (b) does not change this consequence for the reasons previously discussed.

Certainly, the Defendant knew better. When committing these offenses, Defendant acknowledged that he was a repeat offender. He understood his exposure to substantial and enhanced penalties.[8] Just as the State will not surprise a defendant with greater punishment in an *ex post facto* fashion, neither should a defendant feign surprise about the penalties that accompanied his conduct at the time of offense.

In making this decision, the Court is aware that many states have chosen a different path.[9] However, the pole star to

---

be affected as well. For example, see, *Poteat v. State*, Del.Supr., No. 238, 2003, 2003 WL 22992209, Holland, J. (Dec. 19, 2003). The defendant was sentenced in April of 2003, in part, for Trafficking in Cocaine, by having 5.3 grams. While his appeal was pending, H.B. No. 210 was enacted. His 3 year mandatory minimum sentence was imposed under the law at the time of his offense. The sentence was not challenged. However, in one appellate case, a defendant did not benefit from a more lenient change in punishment for a marijuana offense when the law changed after sentencing and before appeal under a general savings statute. See *State v. Alley*, 263 A.2d 66, 69 (Me.1970), cited in *State v. Hardy*, 489 A.2d 508, 512 (Me.1985) for the proposition that a wrongdoer must be punished pursuant to law in effect at date of sentence.

7. The words have special significance. In *United States v. Reisinger*, 128 U.S. 398, 9 S.Ct. 99, 32 L.Ed. 480 (1888), the Supreme Court in applying the federal general savings statute rejected an argument that they did not apply to criminal punishment by saying:

 [t]he only ground upon which the correctness of this interpretation may be doubted is that the words "penalty," "liability," and "forfeiture" do not apply to crimes, and the punishments therefor, such as we are now considering. We cannot assent to this. These words have been used by the great masters of crown law and the elementary writers as synonymous with the word "punishment" in connection with crimes of the highest grade. Thus, Blackstone speaks of criminal law as that "branch of jurisprudence which teaches of the nature, extent, and degrees of every crime, and adjusts to it its adequate and necessary penalty."

8. Defendant was on probation and, although 25 years old, had experience with the criminal justice system. He was on probation with convictions for Possession With Intent to Deliver Cocaine on 8/24/98, Possession of a Non–Narcotic Controlled Substance on 7/7/00, and Possession of a Nonnarcotic Schedule V Controlled Substance Within 1000 feet of a School on 8/8/01. Other convictions included Receiving Stolen Property on 5/18/98, Loitering for Drug Related Activities and Criminal Impersonation on 8/25/99, and Escape Third Degree (LIO Escape After Conviction) on 1/7/02. Possession With Intent to Deliver Heroin and related charges were nolle prossed on 11/1/00. Defendant also had five convictions for Violation of Probation between 7/15/98 and 3/4/03.

9. The state cases which take a different approach than the federal system are summarized in *Holiday* at 67–70. One law review article found that the rule that savings statutes save both the liability and the penalty and invariably require the punishment in effect at the time of the offense applied in a number of states. Note, *Today's Law and Yesterday's Crime: Retroactive Application of*

follow in Delaware is the route selected by the General Assembly.

Considering the foregoing: (1) deference must be given to the legislative intent expressed in 11 *Del.* C. § 211 which preserved rules of law in effect before the approval date of H.B. No. 210, and (2) the General Assembly did not expressly provide in H.B. No. 210 for a retroactive application of the different drug weights and penalties concerning Trafficking in Co-caine and the enhanced sentence for Possession With Intent to Deliver Cocaine for subsequent offenders.

**IT IS SO ORDERED.**

---

*Ameliorative Criminal Legislation,* 121 U. Pa. L. Rev. 120, 134 (1972). The *Holiday* court analyzed state decisions declining to apply a general savings statute. It found that the weight and reasoning of federal cases were more persuasive and left:

> no room for this court to adopt the reasoning of the state supreme courts that have held a general savings statute inapplicable because it is ambiguous [*In Re Estrada,* 63 Cal.2d 740, 48 Cal.Rptr. 172, 408 P.2d 948, 953 (1966)], or expressly is limited to preserving sentences already imposed [*State v. Tapp,* 26 Utah 2d 392, 490 P.2d 334 (1971)] or is an optional canon of statutory construction [*People v. Oliver* 1 N.Y.2d 152, 151 N.Y.S.2d 367, 134 N.E.2d 197, 201 (1956)], or must be construed by reference to legislative intent in other criminal statutes [*State v. Von Geldern,* 64 Haw. 210, 638 P.2d 319 (1981)] or is relevant only to "technical abatements" of an entire criminal offense [*People v. Schultz,* 435 Mich. 517, 460 N.W.2d 505 (1990)].

I also agree with the view expressed in *Holiday* that these cases did not focus on the second half of the required analysis under a general savings statute—whether the repealing or amending legislation expressly provided for retroactive effect.