IN THE SUPERIOR COURT OF THE STATE OF DELAWARE


STATE OF DELAWARE,      )
                             )
     v.                   )     Def. I.D.:  1508012447
                             )
COTY EDGAR,          )
                             )
        Defendant.     )


## MEMORANDUM OPINION

Submitted: September 16, 2016
Decided: October 21, 2016

*Defendant's Motion to Exclude*
*Prior Conviction for Purposes of Enhanced Sentencing.*
**GRANTED.**


Michael B. DegliObizzi, Esquire, Department of Justice, Wilmington, Delaware. Attorney for the State of Delaware.

Allison S. Mielke, Esquire, Wilmington, Delaware. Attorney for Defendant Coty Edgar.


**BUTLER, J.**

# FACTS AND PROCEDURAL HISTORY

In August, 2015, Mr. Edgar, a twice convicted felon, was living in the City of Wilmington with a girlfriend. According to the testimony at trial, he was spotted driving a car that had a license plate that was not fully visible. He was pulled over for this traffic violation when the officers noted a "strong odor, known through training and experience to be the odor of fresh marijuana." Although that is the last reference to marijuana in the record[1] this odor was enough to provoke the officers to ask for Mr. Edgar's permission to search the vehicle. Mr. Edgar consented and he and his passenger alighted, whereupon a search of the vehicle ensued.

In the trunk of the vehicle, police located a plastic shopping bag. Inside said bag was a black case containing a black firearm and 3 magazines. The gun was brand new, a receipt showing that it had been purchased just a few days earlier by Edgar's girlfriend. It was unloaded, in the trunk. To those who may wonder how a gun in the trunk that cannot be accessed from the driver's seat can qualify as "possession," Mr. Edgar told an officer that "although the firearm belongs to his girlfriend, he took same from their apartment and put it into the trunk of the vehicle prior to coming in contact with us." Mr. Edgar's admission thus supplied the evidence that was lacking as to his possession of the firearm.

---

[1] It does not appear that any marijuana – fresh or otherwise – was located in the vehicle.

Mr. Edgar was tried and convicted of possession of a firearm by a person prohibited. The issue now concerns his prior record for "violent felonies," as that calculus directly impacts the length of his inevitable, statutorily mandated prison term. At this point, we would do well to understand the legal milieu confronting Coty Edgar in August, 2015. Some chronology is in order.

## ANALYSIS

### 1. What is a Violent Felony?

The term "violent felony" traces its bloodline to the 1996 amendments to the habitual offender law, specifically 11 Del. C. §4214(a). Historically, fourth time felony defendants subject to subsection "A" of the habitual offender law could receive any discretionary penalty the Court chose to impose from probation to a life sentence. With the 1996 amendments, the habitual offender law began mandating the statutory maximum penalty on 4th conviction felony offenders guilty of committing a "violent felony." In other words, statutory maximum sentences became mandatory minimums for fourth time felons.

So the term "violent felony" suddenly became significant and needed a definition. The class of offenders subject to mandatory maximum sentences under the habitual offender statute could be widened or shrunk according to what the General Assembly classified as a violent felony. The definition was supplied by a contemporaneous amendment to 11 Del. C. §4201(c).

2

The General Assembly adopted what can only be described as an expansive definition of what constituted a violent felony. As passed initially, the term included extortion, stalking, racketeering, delivery of drug paraphernalia to a minor, delivery of a non-controlled substance or a non-controlled prescription drug and possession of drugs within 1000 feet of a school. None of these offenses are exactly desirable behaviors, but none of them are fundamentally "violent" either.

The effect of the 1996 changes was to greatly expand the number of defendants circulating through the court system that were subject to mandatory sentences. Most notable for our purposes here, the term "violent felony" included the crime of escape after conviction. Mr. Edgar's record includes a felony assault in 2007 and an escape after conviction in 2009. This latter charge arose from defendant's 3 day unauthorized leave from the Plummer Center.

A "violent felony" is merely definitional – it does not criminalize any behavior. Edgar's crime before the Court now is possession of a firearm by a prohibited person. He is not a fourth time felon and not subject to habitual offender sentencing. But like the habitual offender statute, the person prohibited statute has received its own legislative makeover that greatly expanded the mandatory sentences flowing from a violation of the statute. Again, a brief history is in order.

3

## 2. Interaction of "Violent Felony" and Prohibited Persons

The person prohibited statute sat in relative obscurity until 1994 when the General Assembly responded to the "Cocaine Wars" then raging by adopting a one year mandatory sentence for possessing firearms by persons prohibited (which included drug felons). Then in 2003, the "person prohibited" statute was amended to boost the mandatory sentence provisions to "1-3-5," meaning prohibited firearms possessors would receive one year mandatory imprisonment if they had a single previous conviction for a "violent felony," three years imprisonment if the "violent felony" dates within 10 years of the termination of all periods of confinement resulting from the prior crime and five years imprisonment if the offender had two prior "violent felony" convictions. The definition of the term "violent felony" in section 1448(e) could be found in the 1996 definitions found in section 4201(c). For the next 10 years, this was the state of mandatory minimum laws as they related to felons possessing firearms.

In the wake of the horrific shooting spree in a movie theater in Colorado in July, 2012 and the senseless murder of 20 school children in Newtown Connecticut in December, 2012, the General Assembly voted to boost the mandatory term of

4

imprisonment for felons in possession of firearms under section 1448(e) from "1-3-5" to "3-5-10."[2]

Thus, defendant's 2007 conviction for Assault 1st degree – a "violent felony" by anybody's definition – and his 2009 conviction for Escape After Conviction makes him a twice convicted "violent felon" within the meaning of "violent felon" under section 4201(c) and subject to the 10 year mandatory sentence called for by 11 Del. C. §1448(e)(1)(c).

### 3. "Walk Away" Escapes Removed as a Violent Felony

BUT – and here is where it gets a bit tricky – the definitional term "escape after conviction" in section 4201(c) was revised by the General Assembly in 2015 to "escape after conviction *if* convicted as a Class C Felony or a Class B Felony." Escape After Conviction is a Class D felony unless it is accompanied by the use of force, a deadly weapon, or someone is injured while on escape status, in which case it is elevated to a Class B or C felony.[3] Effective with the 2015 amendment to 4201(c), characters such as the defendant, who "walk away" from the Plummer Center may be felons, but not "violent" ones for purposes of enhanced sentencing. This amendment removing "walk away" escapes from the list of violent felonies

---

[2] The connection between deranged mass murderers, with no criminal record at all, killing scores of innocents and felons putting unloaded handguns in trunks is, well, subtle.

[3] 11 Del. C. § 1253.

became effective June 15, 2015. Defendant committed this offense on August 16, 2015.

Which brings us to the instant controversy: the State asks the Court to impose a 10 year minimum mandatory sentence on the defendant because at the time of his conviction for escape in 2009, it was then considered a "violent felony." The State contends that the fact the General Assembly subsequently amended the statute to remove nonviolent escapes from the list should not matter. According to the prosecution, once a defendant commits a "violent felony" at a time when it was designated a "violent felony," he is always a "violent felon" regardless whether the offense comes off the list of violent felonies in section 4201(c).

The prosecution says this is so because of 11 Del. C. §211 – the "Savings Clause" – that provides that the repeal of a statute shall not have the effect of "releasing or extinguishing any penalty, forfeiture or liability incurred under such statute, unless the repealing act shall so expressly provide." The State would have the Court impose 10 years of mandatory time on the defendant because once the defendant was convicted of two felonies considered "violent" at the time of the conviction, he was subject to the two violent felony enhancement under section 1448(e)(1)(c) and that designation lasts until the end of time; it cannot be changed

6

even with the repeal of the violent felony designation because of the savings clause provision.

### 4. The Savings Clause Does Not "Save" Definitional Sections

Well, hold on here. The defendant in this case committed his "person prohibited" crime some 2 months after the escape charge, to which he had previously pled guilty, had been removed from the definition of "violent felony." So the offense date in this case came *after* the repeal date of the code provision the prosecution seeks to enforce. If the General Assembly had simply legalized "walk aways" from the Plummer Center instead of removing "walk away" from the list of "violent felonies," there is no question but that Mr. Edgar could not be prosecuted for walking away 2 months after the repeal of the statute. As we understand the prosecutor's position, even though Mr. Edgar could not be prosecuted for a previously repealed crime, his sentencing could nonetheless be enhanced by virtue of a prior offense even if the enhancement has been repealed.

Savings clause statutes are enacted because absent such a clause, the default would be to the common law rule. Under the common law rule, a repeal of a criminal statute would act to halt any prosecution then ongoing that penalized the behavior.[4] Any "saving" of an ongoing prosecution after a repeal would only occur

---

[4] *See State v. Ismaaeel*, 840 A.2d 644, 649 (Del. Super. 2004), aff'd, 2004 WL 1587040 (Del. June 25, 2005).

7

if a court could divine a legislative intent to save it from the history or structure of a bill's passage.

The purpose of Delaware's savings clause is not a mystery. As noted in the synopsis, "The savings clause guards against an unanticipated judicial interpretation which holds that an amendment of a statute constitutes a repeal." 1998 Delaware Laws Ch. 263 (H.B. 277).

Section 4201(c) is a definitional statute, it cannot be enforced by itself and it works no "penalty, forfeiture or liability;" it simply defines a "violent felony." Section 211 saves liability after repeal for any penalty "incurred under such statute." But the liability for escape is in the escape statute, not the statute defining violent felonies. The savings statute does not apply to a definitional section.

Had Mr. Edgar been caught with this firearm in the days before the change in the definition of violent felony, the prosecutor's savings clause argument would have far more currency. It is all but axiomatic that a savings clause requires courts to apply the penalties in place at the time the crime was committed.[5] The penalties in place at the time this crime was committed did not include a "violent felony" enhancement.

---

[5] *See State v. Lewis*, 144 A.3d 1109 (Del. Supr. August 4, 2016) ("We hold, consistent with decisions interpreting a similar federal saving statute, that Delaware's criminal saving statute permits the State to prosecute crimes under a repealed criminal statute when the crimes were committed before the statute's repeal."). *See also United States v. Smith*, 632 F.2d 1043, 1047-49 (8th Cir. 2011).

8

The possibility that on some day, in an uncertain future, the defendant may commit a new offense and have his escape conviction counted as a violent felony regardless whether it is still considered such by the General Assembly at the time one commits that future crime is at best (or worst) a "collateral consequence" of the escape charge – it is not part of the crime or the punishment for the crime of escape after conviction.[6] It would seem self-evident that if a consequence of a conviction is merely "collateral," then by definition it is not a "penalty, forfeiture or liability" within the meaning of the savings clause. When viewed as such, there was nothing to be "saved" by the repeal of the expansive definition of escape. The "savings clause" analysis offered by the state is not well taken.

The prosecutor's interpretation of the statute is not only illogical, it is unprecedented.

The prosecution directs us to *French v. State*,[7] for the proposition that the designation of "violent felon" follows the offender forever. This is a distortion of what the *French* Court held.

French was charged with possession of a firearm by a person prohibited. The indictment charging him alleged that he was prohibited by virtue of a conviction

---

[6] *See generally Barkley v. State*, 724 A.2d 558 (Del. Supr. 1999)(defining a "collateral consequence" as one "not related to the length or nature of the sentence imposed on the basis of the plea." (citations omitted)); *Kipp v. State*, 704 A.2d 839 (Del. Supr. 1998)(failure to inform defendant that conviction would prohibit defendant from possessing firearm in future is merely a collateral consequence).

[7] *French v. State*, 38 A.3d 289 (Del. Supr. 2012).

for maintaining a dwelling for keeping drugs – a nonviolent felony, but a felony nonetheless. Upon his conviction, the government filed a petition to declare him a habitual offender pursuant to 11 Del. C. §4214(b), calling for a "mandatory maximum" penalty available for the crime of violating 11 Del. C. §1448(e) – or 8 years in jail.

French argued on appeal that since the predicate felony in his indictment – maintaining a dwelling – was not a "violent felony," he could not be sentenced as a habitual offender on the person prohibited charge as a "violent felony." But his record included a separate offense of Escape After Conviction which, at the time, included all escapes – walkaways and otherwise. That "violent felony" was included in the prosecutor's habitual offender petition. Why is that important? Because 11 Del. C. §1448 has numerous pathways to being prohibited from possessing a firearm, only one of which is a prior conviction for a "violent felony." In that one subset of prior felony convictions, if a defendant has a prior conviction for any violent felony, then a violation of the person prohibited statute, section 1448, is itself a "violent felony" and a defendant is subject to enhanced sentencing under either section 1448(e) or in French's case, habitual offender sentencing, section 4214(b). French's argued that he could not be sentenced under 4214(b) as a "violent felony" because the indictment charging a predicate felony was not a

10

violent felony, but he conceded that the escape charge at the time of his appeal was a violent felony.

No Code provision had been amended or repealed and section 211 was not implicated in the *French* decision. The *French* opinion stands for the proposition that the government does not need to charge in the indictment the predicate violent felonies upon which it will rely in later seeking habitual offender sentencing due to prior violent felony convictions. *French* does not even attempt to answer the question what happens when the underlying felonies supporting the petition are declassified as violent felonies by the legislature. That issue was not before the Court.

The prosecution also relies on *State v. Trawick*.[8] This was a case in which the defendant, convicted of being a person prohibited, received habitual offender sentencing based in part on a conviction for possession of drugs within 300 feet of a park. The possession within a park zone charge was considered a violent felony under section 4201(c) until September, 2011, about 4 months *after* he was convicted of the charge. So Trawick's argument was not that his sentencing was being enhanced based upon a statute repealed *before* he committed the offense. He argued his sentence was invalidated by the subsequent repeal of the violent felony designation *after* his conviction for the charge. The Superior Court rejected the

---

[8] *State v. Trawick*, 2014 WL 5741005 (Del. Super. Oct. 27, 2014).

11

argument, but it is a completely different case from the one presented here. Here, the statute was repealed *before* Edgar's conviction – indeed, before he even committed the offense.

Finally, we consider the prosecutor's proffer of *Sommers v. State.*[9] In *Sommers*, the defendant pled guilty to the person prohibited statute and the government sought enhanced sentencing under the "1-3-5" provision then required before the 2013 amendment to the Code boosted the mandatory sentences to "3-5-10." The prosecution argued that Sommers had 2 prior violent felonies: a 1993 conviction for vehicular assault 1st degree in 1993 and a 1999 conviction for Unlawful Sexual Penetration 2d degree. He was thus subject to the 5 year mandatory provision but argued that the 1993 Vehicular Assault conviction should not be considered a prior violent felony because the "violent felony" designation was not applied to vehicular assault 1st degree until 1996.[10] The Supreme Court affirmed Superior Court's rejection of the argument, ruling that "at the time Sommers committed the current crime of PFBPP, both of these prior offenses were included in the list of those violent felonies that could be used to enhance a sentence for PFBPP."[11] Here, at the time Edgar committed the current crime of

---

[9] *Sommers v.* State, 2010 WL 5342953 (Del. Supr. Dec. 20, 2010).

[10] Recall that 1996 was the first time subsection "c" was added to section 4201. This was the first time Delaware ever classified what crimes would be considered "violent."

[11] *Sommers,* 2010 WL 534295, at *1.

12

PFBPP, only the Assault 1st degree was included in the list of those violent felonies that could be used to enhance a sentence for PFBPP. The *Sommers* case, rather than supporting the prosecution position, supports just the opposite.

From this survey, the Court is satisfied that the prosecution is on its own; no decision it has cited favors its logically dubious position.

## CONCLUSION

The law as it stood on August 4, 2015 when defendant committed the offense for which he was convicted, defined Assault 1st degree as a "crime of violence" but did not define a nonviolent walkaway from the Plummer Center as a violent felony. The law as it stood on August 4, 2015 rendered the defendant subject to sentencing under 11 Del. C. S1448(e)(1)(b) to 5 years of mandatory time. The Court will impose the sentence subject to these considerations.

**IT IS SO ORDERED.**

Judge Charles E. Butler

13